UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
RENE ORLANDO DE LA ROSA
IZAGUIRRE,

                              Petitioner,                         **MEMORANDUM & ORDER**
                                                                    26-CV-2911 (PKC)

          - against -

TODD BLANCHE, in his official capacity as
Attorney General of the United States; *et al.*,

                              Respondents.
--------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Petitioner, Rene Orlando De La Rosa Izaguirre, a father of six and native of Guatemala, who has been living in the United States for at least six years without authorization, was arrested alongside his son by Immigration and Customs Enforcement ("ICE") on May 14, 2026. The next day, on May 15, 2026, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Section 2241"), seeking release from custody. Petitioner does not dispute that he received a final order of removal in 2017, or that he could properly be arrested, detained, and ultimately removed pursuant to 8 U.S.C. § 1231. Instead, Petitioner only argues that Respondents did not take the steps necessary to lawfully arrest and detain him. Based on the extensive submissions from both parties, the Court finds by a preponderance of the evidence that Respondents lacked a lawful basis for Petitioner's arrest and detention at the time those actions occurred. Accordingly, the Court grants Petitioner's request for a writ of habeas corpus and orders his immediate release.

**BACKGROUND**

### I.    Factual Background[1]

### A.    Petitioner's 2017 Removal

Rene Orlando De La Rosa Izaguirre is a citizen of Guatemala who has been residing in the United States for at least six years. (*See* Am. Pet., Dkt. 9, at ECF[2] 2–3.) On May 9, 2017, Petitioner entered the United States across the southern border without authorization. (*See* Decl. of Special Agent Warren Smith ("Smith Decl."), Dkt. 8-1, ¶ 3.) That day, Petitioner was stopped by U.S. Border Patrol agents and admitted that he had illegally crossed the border that day. (*See id.*) The U.S. Border Patrol issued a Notice Order of Expedited Removal (Form I-860), charging inadmissibility pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), and placed Petitioner in expedited removal proceedings. (*See id.*; Form I-860, Dkt. 8-2.) Petitioner was also served with a Notice to Alien Ordered Removed/Departure Verification, which found Petitioner inadmissible to the United States under INA § 212(a)(9), codified at 8 U.S.C. § 1182(a)(9), and accordingly prohibited him from entering, attempting to enter, or being in the United States for a period of five years from the date of his removal from the United States. (*See* Smith Decl., Dkt. 8-1, ¶ 4.) The following day, May 10, 2017, Petitioner was federally prosecuted for illegal entry to the United States under 8 U.S.C. § 1325(a)(1) and sentenced to five days' imprisonment. (*See id.* ¶ 5.) On May 25, 2017,

---

[1] The Court's understanding of the facts is grounded in the operative submissions from the parties, (*see* Am. Pet., Dkt. 9; Resp. O.S.C. ("Resp't's First Resp."), Dkt. 8; Decl. Special Agent Warren Smith ("Smith Decl."), Dkt. 8-1; Answer ("Resp't's Second Resp."), Dkt. 15; Suppl. Decl. Special Agent Warren Smith ("Smith Suppl. Decl."), Dkt. 15-1), between which there appears to be no material factual disputes.

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Petitioner was removed to Guatemala pursuant to an expedited order of removal.  (*See id.* ¶ 7.)

Subsequently, on a date and at a place unknown to Respondents, Petitioner reentered the United

States.[3]  (*See id.* ¶ 8.)

### B.    Petitioner's 2026 Arrest and Detention

Petitioner is a "father, sponsor, guardian, caretaker, and central provider" for six children

between the ages of 26 years old and 13 months old.  (Am. Pet., Dkt. 9, at ECF 3.)  The youngest,

the 13-month-old, has serious medical needs that have necessitated surgery and substantial

continuing attention.  (*See id.* at ECF 3–4.)  Numerous orders arising from state family court

proceedings make clear that Petitioner is the primary caretaker for most, if not all, of these children.

(*See id.* at ECF 4–5.)  No evidence has been offered to suggest Petitioner has behaved anything

but lawfully since reentering the United States.

On May 4, 2026, the Department of Homeland Security ("DHS") received an investigative

referral concerning Petitioner because he had been identified as a potential sponsor for an

unaccompanied minor.  (*See* Smith Decl., Dkt. 8-1, ¶ 9.)  The referral directed Special Agent Smith

to conduct an interview with Petitioner.  (*See id.*)  While reviewing the referral before initiating

the interview, Special Agent Smith learned of the 2017 order of removal and Petitioner's

subsequent removal.  (*See id.*)  Special Agent Smith then directed the issuance of a Form I-205

Warrant of Removal/Deportation ("Form I-205") for Petitioner.  (*See id.*; Form I-205, Dkt. 8-3.)

The Form I-205, issued on May 12, 2026, states that Petitioner "is subject to removal/deportation

from the United States, based upon a final order by," followed by a checked box for "a designated

---

[3] Though the exact amount of time spent in the United States is unclear, Petitioner's original Petition, portions of which he has since withdrawn, noted that he has been living in the United States since 2017, (*see* Pet., Dkt. 1, ¶¶ 10, 25), and his Amended Petition notes that he has been employed full time in the United States at his current job for "approximately six years," (Am. Pet., Dkt. 9, at ECF 3).

official." (Form I-205, Dkt. 8-3, at 1.)  The Form I-205 goes on to say that the removal is "pursuant to the following provisions of the Immigration and Nationality Act: 212a6Ai"—the INA provision codified at 8 U.S.C. § 1182(a)(6)(A)(i).[4]  (*Id.*)

Two days later, Special Agent Smith and other ICE and DHS agents "conducted a targeted enforcement action in Copiague, New York to locate and arrest Petitioner pursuant to the Form I-205 Warrant of Removal/Deportation."  (Smith Decl., Dkt. 8-1, ¶ 11.)  That morning, a DHS officer "observed an individual matching Petitioner's description, and another male, [later identified as Petitioner's son], exiting the rear yard of a residence, entering a white van, and driving away."  (*Id.*)  The DHS agents proceeded to pursue the van, conduct a vehicle stop eight minutes after Petitioner was first observed, and identify themselves to Petitioner as ICE and DHS officers.  (*See id.*)  The driver of the stopped vehicle identified himself as "Rene Orlando Delarosa-Izaguirre" and provided a New York State Driver's License bearing Petitioner's name.  (*Id.*)  Minutes later, the ICE agents arrested Petitioner and his son and transported them to an ICE detention center.[5]  (*See id.* ¶ 12.)

While Petitioner was being processed, Special Agent Smith drafted a Form I-213, which memorialized the agents' probable cause for arresting Petitioner.  (*See id.*; Form I-213, Dkt. 8-4.)  The Form I-213 included, *inter alia*, the following information:

---

[4] This provision of the INA states only that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."  8 U.S.C. § 1182(a)(6)(A)(i).

[5] ICE also detained Petitioner's son, who filed a habeas petition in this District on the same day.  *See* Pet., *De La Rosa Jimenez v. Blanche*, No. 26-CV-2910 (AMD) (E.D.N.Y. May 15, 2026), Dkt. 1.  After Judge Donnelly ordered Respondents to show cause in that case, Respondents released Petitioner's son from custody.  *See* Letter, *De La Rosa Jimenez v. Blanche*, No. 26-CV-2910 (AMD) (E.D.N.Y. May 22, 2026), Dkt. 6.

- "FAMILY INFORMATION: . . . Child: Subject does not have children or dependents." (Form I-213, Dkt. 8-4, at ECF 1.) "Number and Nationality of Minor Children: None." (*Id.*) "Family: Rene Orlando DE LA ROSA-Izaquirre claims he is not married but has a common law wife[.]" (*Id.* at ECF 3.)

- "CURRENT ADMINISTRATIVE CHARGES . . . 05/11/2026 – 212a6Ai – ALIEN PRESENT WITHOUT ADMISSION OR PAROLE." (*Id.* at ECF 2.)

- "ARREST: . . . officers conducted a targeted enforcement arrest on [Petitioner] . . . pursuant to [a] warrant of removal/deportation (I205)." (*Id.*)

- "Immigration History: . . . [Petitioner] has since reentered the United States at a place not designated as a port of entry by the Attorney General of the United States and/or the Secretary of Homeland Security, the successor, thus he was not admitted, inspected, or paroled in the United States by a U.S. Immigration Official." (*Id.* at ECF 3.)

Respondents never made a finding that Petitioner was a flight risk. (*See* Answer ("Resp't's Second Resp."), Dkt. 15, at 15 ("Respondents do not assert that a [8 U.S.C. § 1357(a)(2) risk of flight] finding was made[.]").)

During processing, ICE confirmed Petitioner's identity and prior removal in 2017 through photographing and fingerprinting.[6] (*See* Smith Decl., Dkt. 8-1, ¶ 12.) Special Agent Smith then

---

[6] Respondents' declaration from Special Agent Smith also claims that by "taking [Petitioner's] fingerprints, and photograph," he "confirmed" that Petitioner had "illegally reentered the United States" since 2017. (Smith Decl., Dkt. 8-1, ¶ 12.) But it is unclear from Respondents' submissions how the fingerprints and photographs could have confirmed a reentry to the United States for which Respondents claim to have no records of the date or place of entry. More likely, Special Agent Smith confirmed that Petitioner had not reentered legally through a designated port of entry.

provided Petitioner with a Notice of Intent/Decision to Reinstate Prior Order (Form I-871).  (*See id.* ¶ 13; Form I-871, Dkt. 8-5.)  The Form I-871 stated the following:[7]

> In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 241.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of <u>Removal</u> entered against you.  This intent is based on the following determinations:
>
> > (1) You are an alien subject to a prior order of deportation / exclusion / removal entered on <u>May 9, 2017</u> at <u>Eagle Pass, TX</u>.
> >
> > (2) You have been identified as an alien who was removed on <u>May 25, 2017</u> pursuant to an order of deportation / exclusion / removal.
> >
> > (3) You illegally reentered the United States on or about <u>Unknown Date</u> at or near <u>unknown place</u>.
>
> In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation, or removal and are therefore subject to removal by reinstatement of the prior order.  You may contest this determination by making a written or oral statement to an immigration officer.  You **do not** have a right to a hearing before an immigration judge.
>
> *The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the <u>Spanish</u> language.*

(Form I-871, Dkt. 8-5, at 1.)  The bottom of the Form I-871 then included a signature from Petitioner adjacent to a checked box indicating he did "not wish to make a statement contesting this determination," as well as signatures from Special Agent Smith and a supervising officer.  (*Id.*)  Respondents state that

> Because Petitioner appeared to understand little English, the entirety of his May 14 processing was conducted by Special Agent Smith (who was trained and tested in Spanish but is not fluent) together with HSI Special Agent Freddy Gomez, a native speaker who has been certified in the Spanish language.  Special Agent Gomez, in

---

[7] The language that appears to have been manually printed onto the page by ICE is underlined, while non-underlined language appears to be native to the Form I-871.

Spanish, presented all of the processing documents and rights to Petitioner, including the Form I-871, the facts forming the basis of the removability determination and the right to make a written or oral statement contesting it. Petitioner replied that he understood the form as presented in Spanish, and he signed it, indicating that he did not wish to make a statement contesting the determination.[8]

(*See* Resp't's Second Resp., Dkt. 15, at 18 (citations omitted).)

Petitioner has remained detained at the Metropolitan Detention Center in Brooklyn since May 22, 2026. (Am. Pet., Dkt. 9, at ECF 13.)

## II.    Procedural Background

On May 15, 2026, the day after Petitioner was arrested, he filed a petition for a writ of habeas corpus. (Pet., Dkt. 1.) Petitioner "challenge[d] the legality of [his] arrest and continued detention under the Fourth Amendment, 8 U.S.C. §§ 1225, 1226, and 1357, the Due Process Clause, and binding agency regulations." (*Id.* ¶ 2.) Petitioner alleged, *inter alia*, that he is "law-abiding," (*id.* ¶ 20), "has never been arrested anywhere in the world," (*id.*), the arresting "ICE agents did not present a warrant because none existed, nor did they have probable cause to arrest [him and his son]," (*id.* ¶ 26), and "[u]pon information and belief, [Petitioner and his] son were racially targeted by ICE at the time of arrest," (*id.* ¶ 21). The Petition sought interim orders restraining Respondents from transferring Petitioner outside this District, and ultimately an order directing his release from detention. (*Id.* ¶ 42.)

On the day the Petition was filed, the Court issued an Order to Show Cause & Temporary Restraining Order, which ordered: (1) by May 20, 2026, Respondents were to "show cause in

---

[8] Unlike most factual assertions for which there appears to be agreement between the parties, Petitioner has not had an opportunity to object to or scrutinize Respondents' recitation of the circumstances and adequacy of the translation. Since the Court does not base its decision on these facts, it assumes for the purposes of this Memorandum and Order the accuracy of Respondents' account on this point.

writing why a writ of habeas corpus should not be issued and why Petitioner should not be immediately released"; (2) Respondents were "restrained from removing Petitioner from the United States until further order of this Court"; and (3) Respondents were "restrained from transferring Petitioner to a facility outside of this District, the Southern District of New York, or the District of New Jersey absent further order of this Court." (O.S.C., Dkt. 6 (emphasis omitted).) Respondents sought an extension of time until May 22, 2026 to respond to the Court's Order to Show Cause, (*see* Dkt. 7), which the Court granted, (*see* 05/20/2026 Dkt. Order).

On May 22, 2026, Respondents submitted a letter response to the Court's Order to Show Cause. (*See* Resp. O.S.C. ("Resp't's First Resp."), Dkt. 8.) Respondents' letter described a factual record that substantially diverged from the allegations in the Petition. Most notably, Respondents claimed that Petitioner had previously been removed from the United States and thus he was being detained pursuant to 8 U.S.C. § 1231(a) ("Section 1231(a)"). (*Id.* at 1–2; *contra* Pet., Dkt. 1, ¶ 20 (stating Petitioner "has never been arrested anywhere in the world").) Accordingly, Respondents argued that the Court lacked jurisdiction to consider the Petition pursuant to various provisions of 8 U.S.C. § 1252 ("Section 1252"). (Resp't's First Resp., Dkt. 8, at 3–6.) As to the merits of Petitioner's challenges to his arrest and detention, Respondents argued that his continued detention is lawful pursuant to Section 1231(a), they had reasonable suspicion to stop Petitioner in his vehicle, and they had both a warrant and probable cause to arrest Petitioner. (*Id.* at 6–8.)

Given the substantial differences in the factual allegations in the Petition and Respondents' letter response, most notably whether Petitioner had been previously removed, the Court ordered Petitioner to file a reply to Respondents' letter response, including a specific instruction for Petitioner to address Respondents' jurisdictional arguments. (*See* 06/05/2026 Dkt. Order.) On June 15, 2026, Petitioner filed an Amended Petition largely confirming the accuracy of

8

Respondents' factual recitation but still asserting that Petitioner's arrest and detention were unlawful.[9] (*See* Am. Pet., Dkt. 9.) Petitioner's Amended Petition claimed, *inter alia*, that (1) the Form I-205 Warrant could not independently justify Petitioner's arrest, making the arrest functionally warrantless, and accordingly violated his Fourth Amendment rights, 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.8, (*see id.* at ECF 15–16); (2) Petitioner's order of removal was not validly reinstated due to Respondents' failure to comply with 8 C.F.R. § 241.8 ("Section 241.8"), (*see id.* at ECF 18–19); and (3) Petitioner's arrest and detention are unlawful as a result of Respondents' failure to comply with ICE Directive 11064.4, (*see id.* at ECF 19–38).[10]

After receiving the Amended Petition, the Court directed Petitioner to submit additional briefing regarding the jurisdictional issues Respondents had raised in their response to the Court's Order to Show Cause. (*See* 06/16/2026 O.S.C.) In response, Petitioner filed a letter that included authorities supporting the Court's jurisdiction to consider the Amended Petition. (*See* Pet.'s Letter, Dkt. 11.) The Court then directed Respondents to respond to the Amended Petition, including seven specific issues for Respondents to address. (*See* 06/29/2026 Dkt. Order.) On July 8, 2026, Respondents submitted their response to the Amended Petition. (*See* Resp't's Second Resp., Dkt. 15.) The Amended Petition is now ripe for the Court's consideration.

---

[9] Counsel for Petitioner explained that the original Petition was filed on an expedited basis to ensure the Petition would be filed before transfer and/or removal, and thus relied on incomplete information known to Petitioner's children. (Am. Pet., Dkt. 9, at ECF 2.) Accordingly, counsel for Petitioner withdrew the allegations that "Petitioner had no prior arrest and no prior removal order." (*Id.*)

[10] Petitioner raises two other issues in his "Claims and Arguments" section of his Amended Petition: Respondents' failures to (1) certify the true cause of detention under 28 U.S.C. § 2243, and (2) produce the complete 2017 expedited removal record. (Am. Pet., Dkt. 9, at ECF 14, 17.) Neither of these claims appears to independently justify a writ of habeas corpus, and in any event are moot given that the Court grants habeas relief on other grounds.

**LEGAL STANDARD**

Petitioner filed his Amended Petition pursuant to Section 2241, which authorizes a district court to grant a writ of habeas corpus where a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have jurisdiction to adjudicate habeas corpus petitions challenging immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (explaining that Section 2241 "authorize[s] any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws . . . of the United States'" (quoting 28 U.S.C. § 2241(c)(3))). A petitioner under Section 2241 "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Parke v. Raley*, 506 U.S. 20, 31 (1992); *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

**DISCUSSION**

**I.    Jurisdiction**

Before turning to the merits of the Amended Petition, the Court addresses Respondents' three independent arguments that the Court is jurisdictionally barred from adjudicating the claims in the Amended Petition. First, Respondents argue that Sections 1252(a)(5) and 1252(b)(9) restrict the jurisdiction of district courts to review orders of removal and thus bar the Court from considering the Amended Petition. (*See* Resp't's First Resp., Dkt. 8, at 3–5.) Second, Respondents argue that Section 1252(g) separately but similarly presents a jurisdictional bar. (*See* Resp't's Second Resp., Dkt. 15, at 7–9.)[11] Finally, Respondents further argue that even if these provisions

---

[11] Respondents did not raise this argument in their response to the Court's Order to Show Cause, (Resp't's First Resp., Dkt. 8), and raised it for the first time in their Answer to the Amended Petition, (Resp't's Second Resp., Dkt. 15).

of Section 1252 do not bar the Court from exercising jurisdiction to consider the Amended Petition, Sections 1252(a)(2)(A) and 1252(e) severely restrict the scope of the Court's review.  (*See* Resp't's First Resp., Dkt. 8, at 5–6.)  The Court is not persuaded by any of these arguments.

### A.    Jurisdiction is Not Barred by 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9)

Respondents incorrectly assert that Sections 1252(a)(5) and 1252(b)(9) bar the Court from exercising jurisdiction to consider Petitioner's claims that Respondents violated regulations, statutes, and Petitioner's constitutional rights in arresting and detaining him.

As relevant here, Section 1252(a)(5) states:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e).  For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review pursuant to section 2241 of title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5).  Meanwhile, Section 1252(b)(9) states that:

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

*Id.* § 1252(b)(9).

11

Decisions from the Supreme Court and the Second Circuit have further illuminated the scope of these provisions, and those decisions are binding on this Court. Particularly relevant here is the Second Circuit's recognition that

> longstanding principles of statutory interpretation requir[e] Congress to speak clearly and specifically when it wishes to deprive the federal courts of jurisdiction. Repeatedly, including in the INA context, the Supreme Court has declared that [courts] should 'take account . . . of the presumption favoring interpretations of statutes [to] allow judicial review . . . absent clear statement.'[12]

In *Jennings v. Rodriguez*, the Supreme Court declined to address the entire scope of Section 1252(b)(9), and instead held only that the statute did not apply and the district court had jurisdiction where the habeas petitioners

> [we]re not asking for review of an order of removal; they [we]re not challenging the decision to detain them in the first place or to seek removal; and they [we]re not even challenging any part of the process by which their removability w[ould] be determined.    Under these circumstances, § 1252(b)(9) d[id] not present a jurisdictional bar.

583 U.S. 281, 294–95 (2018) (plurality opinion); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (approvingly quoting the same language from *Jennings*).

Of greater relevance, just last year, the Second Circuit addressed the scope of these provisions and the Supreme Court's decision in *Jennings*. In *Öztürk v. Hyde*, the Second Circuit rejected the government's argument that "because [the habeas petitioner's] constitutional arguments under the First and Fifth Amendments relate[d] to her detention, and because detention

---

[12] *Öztürk v. Hyde*, 136 F.4th 382, 394 (2d Cir. 2025) (first quoting *Kucana v. Holder*, 558 U.S. 233, 237 (2010); then citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 483–84 (1991) ("We hold that given the absence of clear congressional language mandating preclusion of federal jurisdiction and the nature of respondents' requested relief, the District Court had jurisdiction."); *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 671 (1986) ("[O]nly upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." (quotation marks omitted))).

itself is 'necessary for . . . removal proceedings,' [Section] 1252(b)(9) strips district courts of jurisdiction." 136 F.4th 382, 399 (2d Cir. 2025) (citation omitted). The Second Circuit explained that Section 1252(b)(9) did not preclude jurisdiction because the "unlawful detention claims may be resolved without affecting pending removal proceedings." *Id.* "[E]ven if [the] claims have a relationship to 'pending removal proceedings,' [the] claims do not themselves challenge 'removal proceedings' and thus [Section] 1252(b)(9)'s 'channeling function has no role to play.'" *Id.* (quoting *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020)). The Second Circuit cited case law from other courts of appeals in recognizing that the phrase "removal proceedings" is to be construed narrowly as referring to the order of removal, and does not include claims of unlawful arrest and detention.[13] The *Öztürk* panel concluded that "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking," *id.* at 400 (quoting *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011)), and that jurisdiction exists where the petitioner "seeks release from detention," rather than review of the removal determination, *id.*

Here, Petitioner's claims of unlawful arrest and detention fit squarely within the type of claims that are not jurisdictionally barred. Petitioner is clear in his Amended Petition that he does not ask the Court to reopen or vacate the 2017 expedited order of removal. (Am. Pet., Dkt. 9, at ECF 38, 46, 49.) He is not making any claim of "immunity from removal," as "the 2017 expedited-

---

[13] *See id.* at 399–400 (citing *Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023) ("A claim only arises from a removal proceeding when the parties in fact are challenging removal proceedings."); *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) ("[C]laims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process."); *Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006) (holding that district court had jurisdiction where "habeas petitions challenged only the constitutionality of the [petitioners'] arrest and detention, not the underlying administrative order of removal")); *id.* at 400 n.8 (collecting additional cases).

removal history is acknowledged and . . . Petitioner does not ask the Court to adjudicate removability." (*Id.* at ECF 50–51.)  Instead, Petitioner claims that Respondents lacked a valid warrant at the time of his arrest and thus lacked authority to detain him.  *See* (*id.*); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) ("[D]istrict courts in this [C]ircuit have distinguished between challenges to ICE's *discretion* to execute a removal order, which are barred, and challenges to the *manner* in which ICE executes the removal order, which are not." (emphasis added) (collecting cases)).  Petitioner's only requested relief is release from detention stemming from an allegedly unlawful arrest.  (Am. Pet., Dkt. 9, at ECF 57.)  He is not contesting his removability or Respondents' decision to remove him, so Sections 1252(a)(5) and 1252(b)(9) do not apply.

Respondents' original arguments for why the Court lacks jurisdiction, (*see* Resp't's First Resp., Dkt. 8, at 3–5), inexplicably omitted any mention of the Second Circuit's *Öztürk* decision, and instead relied almost entirely on an older Second Circuit decision—*Delgado v. Quarantillo*, 643 F.3d 52 (2d Cir. 2011)—which was clarified in *Öztürk*.[14]  The circumstances underlying the *Delgado* decision make its conclusion distinguishable from the instant case as the *Delgado* petitioner sought "to force an adjudication on the merits of an I–212 application," which the Second Circuit concluded was "indirectly challenging her reinstated order of removal" and thus jurisdictionally barred.  643 F.3d at 55.  In *Öztürk*, the Second Circuit cited *Delgado* approvingly, reciting its core test, but recognized that the outcome differs where the claims are based on

---

[14] This is not the only case where Respondents ignored the directly relevant and controlling *Öztürk* decision.  *See Diallo v. Lyons*, No. 26-CV-3364 (NRM), 2026 WL 1791494, at *5 (E.D.N.Y. June 22, 2026) ("Even while citing *Delgado*, however, Respondents somehow fail to acknowledge that the Second Circuit foreclosed their present arguments under Sections 1252(a)(5) and 1252(b)(9) in *Ozturk*."); *Flores v. Mullin*, No. 26-CV-1855 (GRB), 2026 WL 948298, at *2 (E.D.N.Y. Apr. 8, 2026) ("Respondents' brief, devoted almost exclusively to the preclusive effects of [Sections 1252(a)(5) and (b)(9)], ignores recent, binding precedent [in *Öztürk*].").

unlawful detention and the requested relief is release, not review of the order of removal. *See* 136 F.4th at 400–01. Here, when espousing their jurisdictional arguments to the Court a second time, Respondents mention *Öztürk* once in a footnote and argue that, since there was no final order of removal in that case, it is "inapplicable." (Resp't's Second Resp., Dkt. 15, at 9 n.3.) But the Second Circuit's reasoning did not turn on this fact. Respondents' cursory engagement with *Öztürk* is unpersuasive.

Respondents also cite decisions from courts in this District approving of Respondents' jurisdictional argument. Two decisions, *Villatoro v. Noem*, No. 25-CV-5306 (OEM), 2025 WL 2880140 (E.D.N.Y. Oct. 9, 2025) and *Sauceda Henriquez v. Noem*, No. 25-CV-7023 (LDH), 2026 WL 111665 (E.D.N.Y. Jan. 15, 2026), *appeal filed* January 29, 2026, are factually distinguishable given that the habeas petitioners in those cases sought stays of their orders of removal—the precise type of relief that *is* jurisdictionally barred.[15] Meanwhile, the other seven decisions Respondents cite do not discuss the Second Circuit's handling of this issue in *Öztürk*. (*See* Resp't's First Resp., Dkt. 8, at 3–4 (citing *Jimenez v. Shanahan*, No. 26-CV-1501 (BMC), 2026 WL 1309291, at *2 (E.D.N.Y. May 13, 2026); *Villatoro v. Shanahan*, No. 26-CV-1210 (AMD), 2026 WL 948297, at *2–3 (E.D.N.Y. Apr. 7, 2026)); Resp't's Second Resp., Dkt. 15, at 5–6 (citing *Hernandez v. Mullin*, No. 26-CV-3340 (OEM), 2026 WL 1694286, at *2–3 (E.D.N.Y. June 11, 2026); *Tzay-Tzay v. Brown*, No. 26-CV-3175 (LDH), 2026 WL 1707115, at *1 (E.D.N.Y. June 11, 2026);

---

[15] *See Villatoro*, 2025 WL 2880140, at *3 ("Here, Petitioner seeks a stay of removal under the INA and APA, arguing that he has 'a statutory and regulatory right for USCIS to adjudicate his T Visa application.'" (citation omitted)); *Sauceda Henriquez*, 2026 WL 111665, at *3 ("In the instant matter, Petitioners seek the following relief: (1) An order prohibiting Petitioners' removal from the United States—that is, a stay of the final removal order as to Petitioners—pending adjudication of the Petition; and (2) an order directing Petitioners be released from detention, pending adjudication of the Petition and Petitioner Sauceda Henriquez's Application for T Nonimmigrant Status." (internal citations omitted)).

*Hernandez-Bran v. Blanche*, No. 26-CV-3388 (HG), 2026 WL 1831902, at \*3–4 (E.D.N.Y. June 25, 2026); *Cruz v. Maldonado*, No. 26-CV-2792 (HG), 2026 WL 1785191, at \*3 (E.D.N.Y. June 22, 2026); *Lainez v. Blanche*, No. 26-CV-3103 (AMD), 2026 WL 1758249, at \*3 (E.D.N.Y. June 18, 2026)).)[16] Since it is unclear whether these decisions considered *Öztürk* on this issue the Court declines to follow them.

Conversely, the four decisions from courts in this District that *have* engaged with *Öztürk* in somewhat analogous circumstances—where petitioners were challenging unlawful arrest and detention, rather than collaterally attacking an order of removal—have *all* found that jurisdiction existed. *See Zhang v. Genalo*, 814 F. Supp. 3d 307, 320 (E.D.N.Y. 2025); *Flores v. Mullin*, No. 26-CV-1855 (GRB), 2026 WL 948298, at \*2–3 (E.D.N.Y. Apr. 8, 2026); *D.J.R.R. v. Genalo*, No. 26-CV-3124 (AMD), 2026 WL 1746716, at \*2–3 (E.D.N.Y. June 17, 2026); *Diallo v. Lyons*, No. 26-CV-3364 (NRM), 2026 WL 1791494, at \*4–5 (E.D.N.Y. June 22, 2026). Each found that district courts had jurisdiction to consider claims of unlawful arrest and detention arising out of statutory and/or constitutional violations, notwithstanding the limitations of Sections 1252(a)(5) and 1252(b)(9) on district courts' jurisdiction to consider claims directly or indirectly challenging orders of removal. This Court similarly finds that Respondents' reading of Sections 1252(a)(5) and 1252(b)(9) sweeps too broadly.

---

[16] Unsurprisingly, in each of these cases, the Government's responses to the courts' orders to show cause have *all* failed to even mention the Court of Appeals' decision in *Öztürk*, much less sufficiently distinguish it. *See* Resp. O.S.C., *Jimenez v. Shanahan*, No. 26-CV-1501 (BMC) (E.D.N.Y. Mar. 19, 2026), Dkt. 7; Opp'n Pet. Writ Habeas Corpus, *Villatoro v. Shanahan*, No. 26-CV-1210 (AMD) (E.D.N.Y. Mar. 10, 2026), Dkt. 8; Resp. O.S.C., *Hernandez v. Mullin*, No. 26-CV-3340 (OEM) (E.D.N.Y. June 9, 2026), Dkt. 8; Resp. O.S.C., *Tzay-Tzay v. Brown*, No. 26-CV-3175 (LDH) (E.D.N.Y. June 3, 2026), Dkt. 23; Resp. O.S.C., *Hernandez-Bran v. Blanche*, No. 26-CV-3388 (HG) (E.D.N.Y. June 12, 2026), Dkt. 11; Resp. O.S.C., *Cruz v. Maldonado*, No. 26-CV-2792 (HG) (E.D.N.Y. June 3, 2026), Dkt. 7; Resp. O.S.C., *Lainez v. Blanche*, No. 26-CV-3103 (AMD) (E.D.N.Y. June 1, 2026), Dkt. 12.

16

### B.    Jurisdiction is Not Barred by 8 U.S.C. § 1252(g)

For similar reasons, Respondents' argument that Section 1252(g) deprives the Court of jurisdiction fails.  Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

The Supreme Court in *Reno v. American-Arab Anti-Discrimination Committee* clarified that Section 1252(g) does not "cover[] the universe of deportation claims," but rather "is much narrower.  The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" 525 U.S. 471, 482 (1999).  In *Öztürk*, the Second Circuit further explained that a challenge to unlawful detention does not fall within any of these "three discrete exercises of prosecutorial discretion that are shielded by [Section] 1252(g)."  136 F.4th at 397–98.

Here, Petitioner is challenging his unlawful arrest and detention, and does not challenge the decision to "commence proceedings," "adjudicate" his case, or "execute" his removal order. *See* 8 U.S.C. § 1252(g).  The Court, in accordance with every other in this District that has considered the question while engaging with *Öztürk*, finds that Section 1252(g) is inapplicable. *See Zhang*, 814 F. Supp. 3d at 319–20; *Flores*, 2026 WL 948298, at *3; *D.J.R.R.*, 2026 WL 1746716, at *3–4; *Diallo*, 2026 WL 1791494, at *5–6.

17

### C.    Jurisdiction is Not Limited by 8 U.S.C. §§ 1252(a)(2)(A) and 1252(e)

Respondents separately invoke Sections 1252(a)(2)(A) and 1252(e) as limits on the Court's jurisdiction, but those arguments are equally unavailing.  As relevant here, Section 1252(a)(2)(A) states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—
>
>> (i) except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title[.]

8 U.S.C. § 1252(a)(2)(A).  Meanwhile, Section 1252(e), the aforementioned "subsection (e)," states that:

> Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of—
>
>> (A) whether the petitioner is an alien,
>>
>> (B) whether the petitioner was ordered removed under such section, and
>>
>> (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

*Id.* § 1252(e)(2).

While these provisions of Section 1252 are the subject of comparatively less case law, the Court finds that they fail to limit review of Petitioner's arguments for the same reasons.  As discussed above with respect to Sections 1252(a)(5) and 1252(b)(9), limitations on the jurisdiction of district courts to "entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal" do not apply to arrest and detention.  *Id.*

18

§ 1252(a)(2)(A); *see Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 410–11 (S.D.N.Y. 2025) (rejecting jurisdictional bar claims under Section 1252(a)(2)(A) because petitioner "challenges the '*procedure* surrounding the substantive decision' to invoke expedited removal against him," (quoting *Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015))); *Petrova v. U.S. Dep't of Homeland Sec.*, 807 F. Supp. 3d 313, 336 (D. Vt. 2025) (recognizing that "Section 1252(e)(5) prohibits habeas review of whether the alien is actually inadmissible or entitled to any relief from removal," but concluding that the court had jurisdiction because petitioner's "APA and Due Process claims do not require the court to determine whether she is admissible," and that "for similar reasons, Section 1252(a)(2)(A) did not bar judicial review of the case" (citation modified)).

Furthermore, on their face, Sections 1252(a)(2)(A) and 1252(e) appear to apply only to detentions pursuant to 8 U.S.C. § 1225(b)(1).  Respondents have never claimed that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1) and instead have represented that he is "detained pursuant to 8 U.S.C. § 1231(a)." (Resp't's First Resp., Dkt. 8, at 2.)  Therefore, the jurisdictional limitations of Sections 1252(a)(2)(A) and 1252(e) are inapplicable here.  *See Medhani v. Noem*, No. 26-CV-0594 (CAB) (JLB), 2026 WL 809914, at *2 (S.D. Cal. Mar. 24, 2026) ("Petitioner challenges his post-final removal order detention under [8 U.S.C.] § 1231 and *Zadvydas*[, 533 U.S. 678] and not his removal order under [Section] 1225(b)(1), which is what [Sections] 1252(a)(2)(A) and (e) pertain to.").

In sum, no provision of Section 1252 bars the Court from considering Petitioner's claims.

## II.    Legality of Petitioner's Arrest and Detention

"Under settled Supreme Court precedent, 'aliens who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.'" *Barbosa da Cunha v. Freden*, 175 F.4th 61, 86 (2d Cir. 2026) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).  Even

19

though it is not for courts to pass "judgment on the Government's policy decision to devote public resources to removing as many aliens as it can," the government's "discretion is not unlimited." *E.M.M. v. Almodovar*, No. 25-CV-8212 (MMG), 2025 WL 3077995, at *6 (S.D.N.Y. Nov. 4, 2025). "If the Government does choose to embark upon a campaign of mass removal, the Constitution, its guarantees of due process to all persons present in the United States, and the rule of law all demand that detention and removal be conducted lawfully." *Id.*

### A.    Petitioner's Arrest Was Unlawful

ICE agents sought out and arrested Petitioner pursuant to the Form I-205 Warrant of Removal/Deportation. However, this Form I-205 Warrant was not validly executed and could not justify Petitioner's arrest and subsequent detention.

"Form I-205 warrants are used to detain those already subject to a final order of removal." *Ger V. v. Mullin*, No. 26-CV-2543 (KMM) (DTS), 2026 WL 1847044, at *2 (D. Minn. June 26, 2026) (citing 8 C.F.R. §§ 241.2, 241.3(a)).[17] In terms of when an individual is "subject to a final order of removal," Section 241.8(a) of the INA provides that "[a]n alien who illegally reenters the United States after having been removed, or having departed voluntarily, while under an order of exclusion, deportation, or removal shall be removed from the United States by reinstating the prior order." 8 C.F.R. § 241.8(a). Meanwhile, Section 241.8(f) provides that "[e]xecution of the reinstated order of removal and detention of the alien shall be administered in accordance with this

---

[17] In contrast, "Form I-200 warrants are used to detain noncitizens suspected of violating immigration law and can be issued and executed at any time between the issuance of the notice to appear and the completion of removal proceedings." *Ger V.*, 2026 WL 1847044, at *2 (citing 8 C.F.R. § 236.1(b)).

part." *Id.* § 241.8(f).  In other words, the proper established procedure is for the government to reinstate an order of removal and *then* issue a Form I-205 arrest warrant to carry out removal.[18]

But here, Respondents did the opposite.  Respondents suspected that Petitioner was in the United States without authorization, arrested him pursuant to the Form I-205 Warrant, and only then did they follow the process necessary to complete the Form I-871 Notice of Decision to Reinstate Prior Order.  (Smith Decl., Dkt. 8-1, ¶¶ 12–13.)  Indeed, the Form I-205 Warrant says that the removal was "pursuant to the following provisions of the Immigration and Nationality Act: 212a6Ai."  (Form I-205, Dkt. 8-3, at 1.)  But INA Section 212(a)(6)(A)(i) is a reference to the authority under which Petitioner was previously removed in 2017, (Resp't's Second Resp., Dkt. 15, at 14), not a reinstated order of removal pursuant to INA Section 241(a)(5), as codified at Section 1231(a)(5), (Form I-871, Dkt. 8-5).  It was only after Petitioner was in custody that Respondents went through the process necessary to effectuate the Form I-871 Notice of Decision to Reinstate Prior Order.  (*See* Smith Decl., Dkt. 8-1, ¶¶ 12–13.)  But until the I-871 process was complete, Section 1231(a) could not justify an arrest pursuant to a Form I-205 warrant.

The Court specifically directed Respondents to provide "[l]egal authorities supporting the proposition that the I-205 warrant could be validly executed and justify Petitioner's arrest when

---

[18] Respondents appear to be aware this is the proper procedural sequence.  In *Lainez v. Blanche*, on the same day as they arrested Petitioner, Respondents arrested an individual without a warrant pursuant to their authority to do so upon determining the individual was a flight risk. Resp. O.S.C. at 2–3, *Lainez v. Blanche*, No. 26-CV-3103 (AMD) (E.D.N.Y. June 1, 2026), Dkt. 12. Once in custody, Respondents reinstated the individual's "removal order by completing a Notice of Intent/Decision to Reinstate Warning for Failure to Depart Order (Form I-871)" and *then* "completed a Form I-205 Warrant of Removal/Deportation reflecting removal warranted *based on a reinstatement* of [the prior] removal order, under INA § 241(a)(5) [8 U.S.C. § 1231(a)(5)] and 212(a)(6)(A)(i) of the INA [8 U.S.C. § 1182(a)(6)(A)(i)]."  *Id.* at 3 (alterations in original) (emphasis added); *see also Hernandez*, 2026 WL 1694286, at *1 (recounting that "ICE prepared a Form I-205, Warrant of Removal/Deportation, 'charging Petitioner as removable under INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), based on reinstatement of Petitioner's 2015 removal order'" (citation omitted)).

predicated on the 2017 order of removal, rather than predicated on a validly executed reinstated order of removal." (06/29/2026 Dkt. Order (internal citation omitted).) In response, Respondents claimed that Section 1231(a)(5) authorized the Form I-205 Warrant because "a Form I-205 issues 'based on the final administrative removal order in the alien's case'" and "[t]he 'final administrative removal order' in Petitioner's case is, and has been since May 9, 2017, the expedited removal order, which was administratively final when issued." (Resp't's Second Resp., Dkt. 15, at 13–14 (first quoting 8 C.F.R. § 241.2(a)(1); and then citing 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)).) But Respondents fail to cite any authorities directly supporting the proposition that a prior removal order can justify detention under Section 1231(a)(5) without having been reinstated prior to arrest.[19] Meanwhile, there is case law suggesting Respondents' position is incorrect. *See, e.g.*, *DiGrado v. Ashcroft*, 67 F. App'x 634, 635 (2d Cir. 2003) (summary order) ("[S]ince Appellant's prior removal order has not been reinstated, he is not now under a final order of removal." (citing 8 U.S.C. § 1231(a)(5))). Even more tellingly, Respondents take inconsistent positions within their own briefs. Respondents elsewhere state that "[o]nce a

---

[19] Respondents' citations to the text of Section 1231(a)(5) as saying that a "prior order of removal is reinstated from its original date," (Resp't's Second Resp., Dkt. 15, at 13 (emphasis omitted) (quoting Section 1231(a)(5))), is irrelevant as that language speaks to when the order relates back to *after* being reinstated. Likewise, Respondents' case citations lend them no support. *Johnson v. Guzman Chavez*, 594 U.S. 523, 540 (2021), (*see* Resp't's Second Resp., Dkt. 15, at 13), concerned whether certain further proceedings after reinstatement negate the finality of the reinstatement and held that "an alien's initiation of withholding-only proceedings does not render non-final an otherwise 'administratively final' reinstated order of removal." Contrary to Respondents' contention, this language actually suggests that the point of finality is the reinstatement. Meanwhile, Respondents cite *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 150 (2d Cir. 2008), for its statement that reinstatement of a prior order of removal "does not alter petitioner's legal condition." (*See* Resp't's Second Resp., Dkt. 15, at 13.) But, just two sentences later in that opinion, the Second Circuit explained that reinstatement "*gives effect* to a final order issued after a formal hearing before an immigration judge." *Garcia-Villeda*, 531 F.3d at 150 (emphasis added). Again, *Garcia-Villeda* only further supports the idea that a prior order of removal cannot justify arrest until it is "give[n] effect" by reinstatement.

22

foreign national becomes subject to a final removal order, the authority for his continued detention is 8 U.S.C. § 1231(a)" and that "[w]ith respect to reinstated orders of removal, the order is *final upon reinstatement.*"  (Resp't's Second Resp., Dkt. 15, at 10 (emphasis added); Resp't's First Resp., Dkt. 8, at 6 (same).)

Respondents' failures to follow proper procedure in arresting and detaining Petitioner matter.  In an arrest and detention process where individuals are afforded minimal due process protections, the scant requirements placed on the government are largely confined to the reinstatement of orders of removal:

> Proper reinstatement of a final order of removal requires ICE officers to make certain determinations required by [Section] 241.8(a) and to give notice of reinstatement as required by [Section] 241.8(b).  Those requirements are not mere formalities.  They are necessary 'procedural safeguards' to ensure that ICE has done its due diligence before placing a noncitizen under mandatory detention pursuant to [Section] 1231.  These protections are important in the reinstatement context, where reinstatement can be effected by an agency officer rather than a judicial officer and without a hearing.

*Cartagena Jaco v. Blanche*, No. 26-CV-4798 (JPO), 2026 WL 1786007, at *4 (S.D.N.Y. June 22, 2026) (quoting *Garcia-Villeda*, 531 F.3d at 149).  In this case, though, Respondents bypassed all of those safeguards by first arresting Petitioner when they had not complied with the few requirements that exist to ensure notice and fairness to those who might ultimately be removed.[20]

---

[20] *Cf. Garcia Lanza v. Noem*, 822 F. Supp. 3d 326, 332–33 (E.D.N.Y. 2026) (recognizing in the context of an I-200 warrant: "For avoidance of doubt, at no time did an ICE officer obtain a judicial arrest warrant—requiring a demonstration of probable cause for the arrest to a detached, independent judicial officer—the procedure envisioned by the U.S. Constitution.  Rather, the officers resorted to the expedient of a Government form, an I-200 administrative arrest warrant, authorized for use by immigration enforcement officers only under carefully [prescribed] circumstances.  Those circumstances are extremely limited due to the extraordinary nature of this process—it allows arresting officers to issue their own warrants—a rare exception to the traditional practices in American law." (first citing U.S. Const. Amend. IV; and then citing *Walker v. City of Birmingham*, 388 U.S. 307, 320–21 (1967) ("[I]n the fair administration of justice no man can be judge in his own case, however exalted his station [or] righteous his motives."))).

23

By arresting Petitioner without a valid reinstated order of removal, Respondents violated not only Section 241.8(b) and 8 C.F.R § 241.3 ("Section 241.3"),[21] but also Petitioner's due process rights. *See Cartagena Jaco*, 2026 WL 1786007, at *4 (finding petitioner's due process rights were violated where "at the time that the I-205 Warrant was issued, and at the time that [petitioner] was initially detained, no reinstatement decision pursuant to [Section] 1231 had been made," and that [t]herefore, Respondents ha[d] not shown that the warrant rested on a valid legal and procedural foundation, and the warrant itself [could not] serve as evidence of a lawful arrest and detention"); *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 361–62 (S.D.N.Y. 2019) (granting release given a lack of evidence that the habeas petitioner was properly served an order of reinstatement at the time of his arrest). "Ruling otherwise would allow ICE to arrest individuals merely on suspicion of unlawful presence, then seek statutory confirmation of that determination after the fact." *Cartagena Jaco*, 2026 WL 1786007, at *4.[22] The Constitution and federal law demand more.

---

[21] Section 241.3(a) of the INA, "Detention of aliens during removal period," dictates that "*[o]nce* the removal period defined in section 241(a)(1) of the [INA] begins, an alien in the United States will be taken into custody pursuant to the warrant of removal." *Id.* § 241.3(a). The removal period began only when the removal order was reinstated. *See, e.g.*, *Jimenez*, 2026 WL 1309291, at *3 ("Petitioner's removal clock began on March 13, 2026—the date that his removal order was reinstated."); *Alva v. Kaiser*, No. 25-CV-6676 (RFL), 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("Petitioner's 90-day removal period began to run on December 1, 2018, the date that his removal order was reinstated after his reentry into the United States." (citation omitted)); *Khan v. Choate*, No. 19-CV-2733 (CMA), 2020 WL 13544132, at *3 (D. Colo. Jan. 27, 2020) ("The 90-day removal period for Applicant commenced on July 18, 2018, the date the order of removal was reinstated and became administratively final." (citing 8 U.S.C. § 1231(a)(1)(B)(i))).

[22] Respondents attempt to distinguish *Cartagena Jaco* by pointing out that, in that case, Respondents completed the I-871 twenty-two days after arresting the petitioner on the basis of a Form I-205 warrant, whereas here "the reinstatement decision was completed and served the same day as the arrest." (Resp't's Second Resp., Dkt. 15, at 14 n.5.) This is a distinction without a difference. The Court agrees with the *Cartagena Jaco* court's holding that "the fact that no reinstatement had been issued *before [the] arrest* renders the purported basis for his arrest and detention invalid" and that this critical error could not be remedied by Respondents' later completion of the I-871 reinstatement. 2026 WL 1786007, at *4 (emphasis added). This holds true regardless of whether it was hours or days after the arrest.

Not all warrantless arrests of those suspected to be in this country unlawfully are unconstitutional.  Pursuant to 8 U.S.C. § 1357 ("Section 1357"), ICE may detain a noncitizen without a warrant when a person is "likely to escape before a warrant can be obtained for his arrest."  8 U.S.C. § 1357(a)(2).  Here, however, Respondents do not claim that they were relying on Section 1357 to arrest Petitioner.  (*See* Resp't's Second Resp., Dkt. 15, at 15 ("Respondents do not assert that a [Section § 1357(a)(2) risk of flight] finding was made[.]").)[23]  Having chosen to rely on the invalid arrest warrant, ICE was bound to follow the procedures established under Section 1231.

## B.    Petitioner's Other Arguments That Respondents Failed to Comply with Necessary Procedures

Petitioner argues that Respondents failed to follow necessary procedures in other respects that make his arrest and detention unlawful.  (Am. Pet., Dkt. 9, at ECF 18–19.)  First, Petitioner claims that Respondents failed to comply with 8 C.F.R. § 241.8, making the reinstatement of the removal order invalid regardless of whether it preceded or followed the arrest.  Specifically, Petitioner raises concerns with the process Respondents employed for reinstating the order of removal via the Form I-871, namely whether Respondents supplied sufficient materials to Petitioner and whether he was given adequate translations when he was given his statutorily mandated right to make a statement.  (*Id.*)  Second, Petitioner argues his arrest and detention are unlawful as a result of Respondents' failure to comply with ICE Directive 11064.4.[24]  (*Id.* at ECF

---

[23] "Respondents note, however, that if the Court were to conclude that the arrest must be analyzed under the warrantless-arrest framework notwithstanding the pre-existing warrant, the objective facts known to the officers on May 14 would bear directly on the escape inquiry." (Resp't's Second Resp., Dkt. 15, at 15.)  But Respondents cannot now invoke a statutory arrest authority that they did not rely on at the time.

[24] While Petitioner might have a viable claim that Respondents failed to comply with ICE Directive 11064.4, it is unclear whether such a directive, as opposed to a regulation, could give rise to individual rights under the *Accardi* Doctrine.  *See Banegas v. Bondi*, No. 26-CV-0063

19–38.) Since the Court has already concluded that Petitioner's arrest and detention was unlawful, these alternative claims are moot and unnecessary to resolve at this time.

## III.    Remedy

Having concluded that Petitioner's arrest and detention was unlawful from the start, the Court turns to remedy. The "typical remedy" for "unlawful executive detention" is, "of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Seeing as Respondents were not authorized to arrest Petitioner in the first place, but Petitioner has nonetheless spent nearly two months detained, release is appropriate here.

Furthermore, to ensure that Petitioner's rights remain protected and the improper processes that led to the unlawful detention are not re-deployed, Respondents are directed to seek leave from

---

(WMC), 2026 WL 473162, at *2 (W.D. Wis. Feb. 19, 2026) (granting writ of habeas corpus and ordering release where respondents were in "violation of *Accardi* for failure to comply with an [ICE directive] that plainly affects individual rights"); *de Leon v. Ladwig*, No. 25-CV-1884 (DCJ) (CBW), 2026 WL 19095, at *8 (W.D. La. Jan. 2, 2026) (ordering respondents to show cause why petitioner should not be released because "[i]f [petitioner's] continued detention and denial of parole do not comport with the policy set forth in ICE Directive 11032.4, then the [c]ourt must require [r]espondents to abide by their own policy," and subsequently dismissing case because respondents paroled petitioner after the order); *Ixchop-Perez v. Barr*, 821 F. App'x 690, 695 (9th Cir. 2020) (unpublished) ("Although the ICE directive disclaims the provision of any rights or benefits, the *Accardi* doctrine can extend to practices for which the agency disclaims binding effect." (citing *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004) (collecting cases))); *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991) (The *Accardi* Doctrine's "ambit is not limited to rules attaining the status of formal regulations."); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."); *but see Damus v. Nielsen*, 313 F. Supp. 3d 317, 338 (D.D.C. 2018) ("Instead, [*In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1152 (D.C. Cir. 2006)] explicitly distinguished *Morton* on the ground that the procedures contained in the BIA manual at issue in that case were 'intended to benefit' individuals, whereas the DOJ guidelines provided no such protections and instead 'exist[ed] to guide the [DOJ]'s exercise' of its internal decisionmaking to seek subpoenas." (alteration in original) (citations omitted)); *Jagers v. Fed. Crop Ins. Corp.*, 758 F.3d 1179, 1186 (10th Cir. 2014) ("Under the reasoning of the *en banc* court in [*United States v. Thompson*, 579 F.2d 1184, 1191 (10th Cir.1978)], we are not persuaded that the *Accardi* doctrine would apply to these policies, which appear to be departmental 'housekeeping provision[s]' that do not give rise to an enforceable right." (alteration in original)).

this Court should they seek to re-detain Petitioner. Upon a motion demonstrating that Respondents have complied with all relevant and necessary safeguards in reinstating Petitioner's order of removal to justify detention, the Court will review the evidence of satisfactory compliance and, if necessary, hold a hearing to confirm compliance. *See Duong v. Maldonado*, --- F. Supp. 3d ----, No. 26-CV-3189 (NRM), 2026 WL 1841199, at *3 (E.D.N.Y. June 26, 2026) (ordering release and enjoining respondents from "re-detaining [p]etitioner during the pendency of his removal proceedings without prior leave of this [c]ourt"); *Flores-Linares v. Bondi*, No. 26-CV-0298 (SJB), 2026 WL 179208, at *6 (E.D.N.Y. Jan. 22, 2026) (ordering release and enjoining respondents "from detaining or removing [p]etitioner absent further direction from this [c]ourt"); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154–55 (W.D.N.Y. 2025) (ordering release and enjoining respondents "from re-detaining [petitioner] without leave of this [c]ourt, which the [c]ourt will grant only if and when the respondents demonstrate that they have complied with this order and provided [petitioner] with the process he is due").

## CONCLUSION

For the foregoing reasons, Rene Orlando De La Rosa Izaguirre's petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED.

Respondents are hereby ORDERED to release Rene Orlando De La Rosa Izaguirre, without electronic monitoring, including but not limited to GPS monitoring, no later than July 14, 2026, at 12:00 PM ET. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to identification cards, clothing, and money. Respondents shall confirm compliance with these directives in a filing on the docket by 6:00 PM ET on July 15, 2026.

The Court further orders that Respondents shall not re-detain Petitioner without first moving before this Court to demonstrate compliance with all applicable regulatory, statutory, and

27

constitutional requirements necessary to arrest and detain Petitioner.  Should Respondents seek to re-detain Petitioner, they are directed to file a motion with the Court that justifies a lawful arrest.

Should Petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within 30 days of a final judgment in this action, which, if Respondents do not appeal, is September 12, 2026. 28 U.S.C. § 2412(d)(1)(B).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 13, 2026
      Brooklyn, New York

28